```
IN THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF OKLAHOMA

JAMES W. ADDISON,              )
                               )
          Plaintiff,           )
                               )
v.                             )    Case No. CIV-13-280-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )
```

### CORRECTED REPORT AND RECOMMENDATION

Plaintiff James W. Addison (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 6, 1981 and was 30 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade. Claimant has worked in the past as a stock selector, quarry worker, driller/helper, and molding machine operator. Claimant alleges an inability to work beginning May 1, 2005 due to limitations resulting from anxiety, severe depression,

suicidal thoughts, anti-social personality, and PTSD.

## Procedural History

On June 10, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 12, 2011, an administrative hearing by video was held before Administrative Law Judge ("ALJ") Michael Kirkpatrick. On September 19, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on May 9, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to identify all of Claimant's severe impairments; (2) reaching an improper RFC determination; (3) engaging in an improper credibility

analysis; and (4) improperly finding Claimant could perform his past relevant work at step four.

## Step Two Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of PTSD, anxiety disorder, personality disorder, cannabis abuse, nicotine abuse, history of alcohol dependence, and methamphetamine abuse, reportedly in long-term remission. (Tr. 13). The ALJ also found Claimant retained the RFC to perform a full range of work at all exertional levels. However, the ALJ determined Claimant suffered from the non-exertional limitations that he can perform simple, unskilled tasks which do not require interacting with the general public. (Tr. 15). After consultation with a vocational expert, the ALJ found Claimant could perform his past relevant work as a stock selector, quarry worker, driller/helper, and molding machine tender. (Tr. 22).

Claimant contends the ALJ should have found his hernia as a severe impairment. Since the ALJ determined Claimant suffered from other severe impairments, the sole question presented by Claimant's arguments is whether the inclusion of Claimant's hernia limited his ability to engage in basic work activities.

The ALJ recognized that Claimant was diagnosed with a hernia on June 29, 2009 at the Stigler Health and Wellness Center. (Tr.

17). He also found, however, that Claimant received no recommendation for treatment of the condition and that no functional limitation was demonstrated as a result of the hernia. The ALJ also noted that Claimant alleged at the hearing that he had pain, but admitted that the doctor had given him no restrictions. As a result, the ALJ concluded the condition was not severe. (Tr. 14). Claimant contends this assessment was incorrect as he was referred for surgical intervention. The medical record does indeed indicate Claimant has a 2.5 cm right inguinal hernia which bulges with a cough, not reducible. Claimant told Dr. Tracy Baker that he had suffered from the condition for one year with some chronic pain which was worse with bowel movement and exerting himself. Claimant stated he had a bowel movement daily. (Tr. 220-21).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence

6

alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

7

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

The medical record does not indicate that Claimant ever sought treatment for the condition or that a physician placed any limitations upon Claimant attributable to this condition. Claimant has merely demonstrated that he suffers from a medical condition but has failed to take the further required step of showing that the condition represents a severe impairment which restricts his ability to engage in basic work activities. The ALJ did not err in failing to include this condition as a severe impairment at step two.

### RFC Assessment

Claimant contends the ALJ should have included various restrictions found by Dr. Robert L. Spray in his Psychological Evaluation authored on August 2, 2010 in his RFC assessment. Claimant stated he had little interaction with others in his household and hated being around people. He took medication to sleep. (Tr. 289). When he was depressed, he was reclusive and did not feel like doing anything. His suicidal ideation had decreased, but he still felt there was no point in him being here several

8

times a day. He was depressed due to the helplessness of his situation. Claimant reported episodes of anxiety in crowds of people and experienced sweating, rapid heart rate, and feeling like he wanted to run. He was suspicious of other people and experienced episodes of road rage. He felt like he should have died instead of his brother, who was the "good one." (Tr. 291).

Dr. Spray diagnosed Claimant with Major Depression, Intermittent Explosive Disorder, Cannabis Abuse, History of Alcohol Dependence, and Methamphetamine Abuse, reportedly in long term remission. He also found Claimant had a Personality Disorder, NOS with dependent, antisocial, and schizoid features and a GAF of 40. (Tr. 291).

Dr. Spray also completed a Residual Functional Capacity Secondary to Mental Impairments form on Claimant dated May 23, 2011. He found Claimant had an extreme limitation in the areas of relating to coworkers; interacting with supervisors; and accepting instructions and responding appropriately to criticism from supervisors. Dr. Spray also determined Claimant had severe limitations in the areas of following work rules; dealing with work stresses; working in coordination or proximity to others without being distracted by them; completing a normal workday (without interruptions from psychologically-based or pain related symptoms); completing a normal work week (without interruptions from psychologically-based or pain related symptoms); demonstrating

9

reliability; behaving in an emotionally stable manner; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. Dr. Spray found marked limitations in the areas of performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; sustaining an ordinary routine without special supervision; making simple work-related decisions; performing at a consistent pace; avoiding undue constriction of interests; setting realistic goals; responding and adjusting to the use of new and unfamiliar tools and/or machines; and dealing with the general public. (Tr. 297-99). Dr. Spray specifically did not include impairment from substance abuse as he found Claimant to be impaired without drug use. (Tr. 300).

On May 2, 2012, Courtney L. Means, a counselor and triage specialist at the Carl Albert Community Mental Health Center in Heavener, Oklahoma where Claimant received mental health treatment, completed a Residual Functional Capacity Secondary to Mental Impairments form. She found Claimant extremely limited in the areas of relating to coworkers; being punctual within customary tolerances; completing a normal workday and/or workweek (without interruptions from psychologically-based or pain related symptoms); traveling in unfamiliar places or use public transportation;

10

adjusting to the introduction of new and unfamiliar personnel, either among coworkers or supervisors; behaving in an emotionally stable manner; interacting with the general public; accepting instructions and appropriately responding to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; working in coordination or proximity to others without being distracted by them; and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness.

Ms. Means also found Claimant was severely limited in the areas of following work rules; interacting with supervisors; remembering work-like procedures; understanding in every detail complex instructions; carrying out detailed complex instruction; maintaining attention and concentration for extended periods of time; performing activities within a schedule; sustaining an ordinary routine without special supervision; responding appropriately to changes in work procedures; and responding and adjusting to the use of new and unfamiliar tools and/or machines. Claimant was found to be markedly limited in the areas of dealing with work stresses; demonstrating reliability; maintaining regular attendance; performing at a consistent pace without an unreasonable number or length of rest periods; and avoiding undue constriction of interests; responding appropriately to changes in work settings. (Tr. 310-12).

Ms. Means stated that Claimant suffered from major depression disorder, recurrent severe, without psychotic features and antisocial personality disorder. Symptoms of these conditions included feelings of depression, worthlessness, irritability, problems coping with stress, anxiety, suicidal/homicidal ideations with no plan or intent, anger, racing thoughts, and nightmares. (Tr. 312). Ms. Means concluded that Claimant "does not relate or get along well with other people and does not appear to function well in social settings." Id.

The ALJ appears to reject Dr. Spray's assessment largely because Claimant's counsel requested it. This does not form a sufficient basis for rejecting this opinion, especially when the opinion is supported by other evidence in the record. While the medical records from Carl Albert indicate improvement, the ALJ ignores the continued findings of limitations by Ms. Means who was a part of Claimant's treatment team at Carl Albert. On remand, the ALJ shall re-evaluate the opinions of Dr. Spray and Ms. Means and reassess his RFC determination in light of those opinions.

### Credibility Determination

Claimant contends the ALJ failed to consider his mother's third party statement in conjunction with his own testimony. Moreover, the ALJ employs the often used but wholly unhelpful boilerplate language that Claimant's statements are not credible "to the extent they are inconsistent with the above residual

12

functional capacity assessment." The statements must be considered in the RFC assessment not evaluated after the RFC has been determined for their consistency.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

On remand, the ALJ should examine Claimant's allegations of

13

limitations in light of the requirements of Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). He should also consider the statements of Claimant's mother in evaluating Claimant's credibility. Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006).

**Step Four Determination**

Claimant also challenges the ALJ's findings at step four of the analysis because of the faulty RFC determination. The step four analysis is conducted in three distinct phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC. In the second phase, an ALJ must determine the physical and mental demands of a claimant's past relevant work. In the third and final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and physical limitations found in phase one. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(citations omitted). This Court has determined that the ALJ did not specifically include all of the limitations in Claimant's mental RFC. In the second phase, the ALJ's findings as to the demands of Claimant's past relevant work are scant. The third phase is necessarily suspect because of the failings in the first phase. On remand, the ALJ shall re-evaluate his step four findings in light of this decision.

**Conclusion**

The decision of the Commissioner is not supported by

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of September, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE